UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BENEDICT LEROY PSICK, JR. and            CIVIL NO. 11-3101 (MJD/JSM)
ANTONIO GONZALEZ MORENO, JR.,

      Plaintiffs,

v.                                        <u>REPORT AND RECOMMENDATION</u>

WELLS FARGO BANK, N.A.,

      Defendant.


JANIE S. MAYERON, United States Magistrate Judge

The above matter came on for hearing before the undersigned upon Well Fargo's Motion to Dismiss Plaintiffs' Complaint [Docket No. 9]. Timothy L. Thompson, Esq. appeared on behalf of plaintiffs; Ellen B. Silverman, Esq. appeared on behalf of defendant. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Benedict Leroy Psick, Jr. ("Psick") and Antonio Gonzalez Moreno, Jr. ("Moreno") (collectively "plaintiffs") alleged that defendant Wells Fargo Bank, N.A. ("Wells Fargo") breached the Agreement and Stipulation of Class Action Settlement arising from the case <u>In re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation</u>, M:09-CV-2015-JF (N.D. Cal. 2010) (the "Settlement Agreement"). <u>See</u> Complaint [Docket No. 1-2], ¶¶ 1, 7; Appendix to Memorandum in Support of Motion to Dismiss ("Appendix") [Docket No. 12] at p. 30. In addition,

plaintiffs claim that Wells Fargo breached its duty of good faith and fair dealing with respect to the Settlement Agreement.  Complaint, ¶¶ 46, 48.

In their Complaint, plaintiffs alleged the following facts: On April 11, 2005 Psick entered into a "Pick-a-Payment" mortgage loan (the "mortgage loan") on his home with World Savings Bank, FSB.  Complaint, ¶¶ 14, 18.  World Savings Bank, FSB later became Wachovia Mortgage, FSB, which was eventually purchased by Wells Fargo.[1] Id., ¶¶ 14, 15.  Plaintiffs failed to make mortgage loan payments during the summer of 2010, and by September 27 of that year, the loan was over 60 days delinquent.[2]  Id., ¶¶ 19, 20.  Consequently, Wells Fargo foreclosed the mortgage and conducted a sheriff's sale of plaintiffs' home on December 3, 2010.  See Defendant Wells Fargo Bank, N.A.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint and to Dissolve Temporary Restraining Order ("Def.'s Memo.") [Docket No. 11] at p. 8; Appendix at pp. 16-17.

In January 2011, Psick received a notification that he was a member of Settlement Class C within the terms of the Settlement Agreement.[3]  See Complaint, ¶ 23.  Under the terms of the Settlement Agreement, Settlement Class C is defined as follows:

---

[1]     The Settlement Agreement names as defendants Wells Fargo Bank, N.A., World Savings Bank, FSB, and Wachovia Mortgage, FSB. See Appendix at p. 30.

[2]     According to the Settlement Agreement, a mortgage payment that is 60 or more days past due is in "default." See Appendix at p. 44.

[3]     The Settlement Agreement specifies three settlement classes: Settlement Class A, Settlement Class B, and Settlement Class C. See Appendix at pp. 59-60.  Plaintiffs do not contend that they are members of any class other than Settlement Class C.

> All current Borrowers of World Savings Bank, FSB, now known as Wachovia Mortgage, FSB ("Wachovia Mortgage") who, (a) on or after August 1, 2003 and on or before December 31, 2008 entered into a loan transaction with Wachovia Mortgage that is secured by their primary residence; (b) obtained financing from Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan promissory note; (c) have not previously released their claims pursuant to another settlement agreement, final judgment, or other dealings with Wachovia Mortgage; and (d) as of the Date of Preliminary Approval, still have a Pick-a-Payment mortgage loan and are in Default.

Appendix at p. 60.

The United States District Court for the Northern District of California gave the Settlement Agreement preliminary approval on December 16, 2010.  Complaint, ¶ 13. According to the Settlement Agreement, all members of Settlement Class C were entitled to be considered for a loan modification.[4]  See Appendix at p. 64.  Beginning in October 2010, and continuing through the six-month redemption period following the sheriff's sale,[5] plaintiffs communicated with Wells Fargo in an effort to receive a loan modification.  See Complaint, ¶¶ 21, 25.  However, the redemption period expired before plaintiffs received any loan modification.  Id., ¶¶ 21, 31.  Wells Fargo subsequently filed an action to evict plaintiffs from their home.  Id., ¶ 32.

---

[4]     According to the Settlement Agreement, Settlement Class C members are merely *considered*, not guaranteed, to receive a loan modification. See Appendix at pp. 54-69.

[5]     "When lands have been sold . . . the mortgagor . . . within six months after such sale . . . may redeem such lands, as hereinafter provided, by paying the sum of money for which the same were sold, with interest from the time of sale at the rate provided to be paid on the mortgage debt as stated in the certificate of sale . . ."  Minn. Stat. § 580.23, subd. 1.

Plaintiffs brought their original complaint in Hennepin County District Court, which Wells Fargo removed to this Court. <u>See</u> Defendant Wells Fargo Bank, N.A.'s Notification of Notice of Removal [Docket No. 1].

Prior to removal, the Hennepin County District Court granted plaintiffs' motion for a temporary injunction preventing Wells Fargo from evicting plaintiffs from their residence. <u>See</u> Appendix at pp. 28-29.

In their Complaint, plaintiffs requested the following relief: a declaration that the Settlement Agreement is enforceable between the parties; a declaration that Wells Fargo honor the terms of the Settlement Agreement by evaluating them for a loan modification; a declaration that plaintiffs are entitled to retain possession of their home until Wells Fargo complies with the Settlement Agreement; a temporary restraining order and a temporary and permanent injunction enjoining Wells Fargo from evicting plaintiffs from their home until Wells Fargo has complied with the Settlement Agreement; and actual damages and costs of this action. <u>See</u> Complaint at pp. 9-10.

This matter now comes before the Court on Wells Fargo's motion to dismiss plaintiffs' Complaint and to dissolve the temporary restraining order, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    STANDARD OF REVIEW

"[I]f a plaintiff lacks standing, [a] district court has no subject matter jurisdiction. Therefore, a standing argument implicates Rule 12(b)(1)." <u>See</u> <u>Faibisch v. Univ. of Minnesota</u>, 304 F.3d 797, 801 (8th Cir. 2002). A motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. <u>See</u> <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993); <u>see</u> <u>also</u> <u>Osborn v. United States.</u>, 918 F.2d

4

724, 729 n. 6 (8th Cir. 1990).   In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss.   See Osborn, 918 F.2d at 729 n. 6.   The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction.   See Titus, 4 F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729 n. 6.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6). See Titus, 4 F.3d 590 at 593; Osborn, 918 F.2d at 729 n. 6.   "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.   Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."   Osborn, 918 F.2d at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3rd Cir. 1977)).

Here, Wells Fargo has brought a factual challenge to jurisdiction, and the Court will consider its motion accordingly.

To withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   This

5

pleading requirement does not require detailed factual allegations.  Martin v. ReliaStar Life Ins. Co., Civil No. 09-01578 (MJD/AJB), 2010 WL 1840877 at *8 (D. Minn. 2010) (citing Twombly, 550 U.S. at 555).  On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S., at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556).

Where the pleadings refer to a contract that is part of the record, as in this case, the court will examine the language of the contract when considering a Rule 12(b)(6) motion.  M.M. Silta, Inc., v. Cleveland Cliffs, Inc., 616 F.3d 872, 874 (8th Cir. 2010).

The Court now applies these principles to the motions before this Court.

## III.    ANALYSIS[6]

In its motion to dismiss, Wells Fargo argued that pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, plaintiffs lack standing to pursue their claims.  See Def.'s Memo. at pp. 6-7.  Wells Fargo based its motion on the assertion that plaintiffs' Complaint and the terms of the Settlement Agreement establish that plaintiffs are not members of Settlement Class C, and therefore acquired no rights under the Settlement

---

[6]     This Court notes that while the Settlement Agreement provides that it is governed by the laws of the State of California (see Appendix at p. 87), Wells Fargo conceded at the hearing that Minnesota law applies to this case, and that this Court has jurisdiction over this action for the purposes of its motion to dismiss.

Agreement by which they could bring suit.  <u>Id.</u>  Regarding Moreno, Wells Fargo argued that since only "Borrowers" could be members of Settlement Class C,[7] and Moreno was not an "obligor" on the Pick-a-Payment mortgage loan and he did not sign the mortgage, he could not be a member of Settlement Class C.  <u>Id.</u> at pp. 7-8.  As for Psick, Wells Fargo contended that because it had foreclosed the mortgage on his home that secured his loan by holding a sheriff's sale on December 3, 2010, he did not have a Pick-a-Payment mortgage loan on the date the Settlement Agreement was preliminarily approved, and consequently, he was not a member of Settlement Class C.  <u>Id.</u> at pp. 8-9.

In addition to its 12(b)(1) challenge, Wells Fargo submitted that plaintiffs failed to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  <u>See</u> Def.'s Memo. at p. 10.  Wells Fargo claimed that because the Settlement Agreement indicates that neither plaintiff is a member of Settlement Class C for the same reasons as set forth in its Rule 12(b)(1) motion, and the Settlement Agreement is "necessarily embraced" by the pleadings, the Complaint demonstrates on its face an "insuperable bar to relief."  <u>See</u> Def.'s Memo at pp. 10-12.

Lastly, Wells Fargo contended that plaintiffs' challenge to foreclosure proceedings after the expiration of the six-month redemption period constituted an impermissible collateral attack on the foreclosure proceedings.  <u>Id.</u> at p. 13.  According to Wells Fargo, because plaintiffs' declaration of Settlement Class C membership did not challenge the foreclosure process itself, plaintiffs' claim is barred by the Minnesota

---

[7]     The Settlement Agreement defines "Borrower" as "the obligor(s) on a Pick-a-Payment mortgage loan note and the title holder(s) who signed the security instrument subjecting certain real estate property as collateral for such note."  Appendix at p. 42.

Supreme Court's holding in Prior Lake State Bank v. Mahoney, 216 N.W. 2d 681, 682 (Minn. 1974).  Id.; Defendant Wells Fargo Bank, N.A.'s Reply Memorandum in Further Support of its Motion to Dismiss Plaintiffs' Complaint and to Dissolve Temporary Restraining Order ("Def.'s Reply") [Docket No. 15] at p. 6.

Plaintiffs conceded that Moreno lacks standing under Rule 12(b)(1) and agreed to dismiss him as a plaintiff.  See Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Memo.") [Docket No. 14] at pp. 1-2.  However, plaintiffs maintained that Psick is a member of Settlement Class C and has standing to assert his claims.  Id. at p. 2.  While acknowledging that the foreclosure of his mortgage by advertisement and the sheriff's sale invalidated Wells Fargo's right to seek a deficiency judgment,[8] plaintiffs nevertheless argued that Psick is a member of Settlement Class C because the right to seek a deficiency judgment depended on the continuation of the mortgage loan after the sheriff's sale, and thus Psick retained his mortgage loan through the Settlement Agreement's date of preliminary approval.  See Id. at p. 5.  Alternatively, plaintiffs contended that because the issue of subject-matter jurisdiction is intertwined with the merits of this lawsuit (i.e., whether plaintiffs are members of Settlement Class C), it should not be addressed in a 12(b)(1) motion; rather it should be determined under a 12(b)(6) motion or through summary judgment.  Id. at pp. 2-3.

---

[8]   "[A] person holding a mortgage may obtain a deficiency judgment against the mortgagor if the amount a person holding a mortgage receives from a foreclosure sale is less than, for a foreclosure by advertisement, the total amount that attaches to the sale proceeds . . . . A deficiency judgment is not allowed if a mortgage is foreclosed by advertisement . . . and has a redemption period of six months . . . ."  Minn. Stat. § 582.30, subds. 1-2.

In response to Wells Fargo's Rule 12(b)(6) motion, plaintiffs maintained that their Complaint should survive because it states a plausible claim for relief that would permit the Court to reasonably infer that plaintiffs are members of Settlement Class C and that Wells Fargo is liable for the counts alleged in the Complaint. Id. at p. 8.

As for Wells Fargo's claim that their suit amounts to an impermissible collateral attack on the foreclosure, plaintiffs submitted that while collateral attacks are not allowed, Minnesota law allows for a direct attack on the foreclosure sale following the expiration of the redemption period and for an injunction against eviction proceedings. Id. at pp. 9-10.  Plaintiffs insist that in the present case, Wells Fargo's foreclosure action should not have been commenced before it honored the terms of the Settlement Agreement, and accordingly plaintiffs' challenge was a legitimate, direct attack on the foreclosure's validity. Id. at p. 10.

Wells Fargo's motion to dismiss under Rule 12(b)(1) turns on whether plaintiffs are members of Settlement Class C, and the Court focuses its analysis accordingly.

The Settlement Agreement states that only "Borrowers" can be members of Settlement Class C.  See Appendix at p. 60.  "Borrower" is defined as "the obligor(s) on a Pick-a-Payment mortgage loan note and the title holder(s) who signed the security instrument subjecting certain real estate property as collateral for such note."  Id. at p. 42.  In this case, Moreno neither signed the mortgage, nor is he listed as a borrower. Id. at p. 12.  Moreover, plaintiffs conceded that Moreno has no standing to bring this suit.  See Pl.'s Memo. at pp. 1-2.  Thus, Settlement Class C clearly does not include Moreno, and Wells Fargo's motion to dismiss as it relates to Moreno's claims against it should be granted.

This Court also finds that Psick is not a member of Settlement Class C. According to the terms of the Settlement Agreement, borrowers may be members of Settlement Class C only if, "as of the Date of Preliminary Approval, they still have a Pick-a-Payment mortgage loan." Appendix at p. 60. In this case, the date of preliminary approval of the settlement was December 16, 2010. Complaint, ¶ 13. By that time, Wells Fargo had already foreclosed by advertisement the mortgage securing Psick's loan by holding a sheriff's sale on his home (see Complaint, ¶ 22; Appendix at p. 16), which extinguished Psick's mortgage debt. See State v. Zacher, 504 N.W. 2d 468, 472 (Minn. 1993) ("[A] mortgage continues to exist and have vitality in protecting a security interest in the property after the foreclosure sale although the mortgage debt itself is extinguished."). "The debt obligation or promissory note is the principal part of a mortgage transaction." Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W. 2d 487, 493 (Minn. 2009) (citation omitted). "Because the security instrument is incident to the debt—i.e., acts as security for the debt . . . the security instrument can have no separate or independent existence apart from the debt it secures." Id. at 494; see also Hendricks v. Hess, 112 Minn. 252, 256, 127 N.W. 995, 997 (1910) (stating that once a mortgage debt has been paid in full, the mortgage is completely extinguished because it was a mere incident of the debt). In short, upon foreclosure of his mortgage via the sheriff's sale, Psick no longer had any debt because it was extinguished. Consequently he had no Pick-a-Payment mortgage loan as of the date of the preliminary approval of the Settlement. Without a viable loan, Psick fails to meet a fundamental requirement for Settlement Class C membership. See Appendix at p. 60.

Similarly, Psick cannot be a member of Settlement Class C because he is not a "Borrower" as defined by the Settlement Agreement. A "Borrower" must be an obligor

on a Pick-a-Payment mortgage loan note.  <u>See</u> Appendix at p. 42.  An obligor is "[o]ne who has undertaken an obligation; a promisor or debtor."  <u>Black's Law Dictionary</u> 1104 (7th ed. 1999).  Here, since Psick's debt or obligation was extinguished by Wells Fargo's foreclosure and sheriff's sale on his home, he is not an obligor on a Pick-a-Payment mortgage loan note, and accordingly he is not a "Borrower" as defined by the Settlement Agreement.  Again, Psick fails another basic condition for Settlement Class C membership.

Plaintiffs argued that Psick continued to have a mortgage loan even after the sheriff's sale because if a mortgagee can waive its right to a deficiency judgment after a sheriff's sale, there must necessarily be a loan in existence at the time of waiver upon which to base a deficiency judgment.  <u>See</u> Pl.'s Memo. at p. 5.  This argument ignores the fact that Wells Fargo's right to a deficiency judgment was statutorily waived at the sheriff's sale.  Minn. Stat. § 582.30, subds. 1, 2.  Because the sheriff's sale was on December 3, 2010, Wells Fargo could not have waived its right to a deficiency judgment on or after December 16, 2010, the date of preliminary approval of the Settlement Agreement because the waiver had already taken place.  Plaintiffs' position has no merit.

Plaintiffs also asserted that because the mortgage and the loan (or "note," as plaintiffs advocate) are separate and serve distinct purposes, the mortgage itself continued to exist even though the loan debt was satisfied by the sheriff's sale, and therefore Psick had a mortgage loan on the date of preliminary approval.  <u>See</u> Pl.'s

Memo at pp. 4, 6.  In this case, however, the implications of the term "mortgage loan" must be examined in light of the language of the Settlement Agreement.[9]

According to Minnesota law,[10] "[a] contract must be interpreted in a way that gives all of its provisions meaning." <u>Alpine Glass, Inc. v. Illinois Farmers Ins. Co.</u>, 695 F. Supp. 2d 909, 917 (D. Minn. 2010) (quoting <u>Current Tech. Concepts, Inc. v. Irie Enter., Inc.</u>, 530 N.W. 2d 539, 543 (Minn. 1995)). "[I]n the absence of any ambiguity, the language used must be given its usual and accepted meaning, so as to give effect to the intention of the parties as it appears from the entire contract." <u>Otten v. Stonewall Ins. Co.</u>, 511 F.2d 143, 147 (8th Cir. 1975) (citing <u>Bobich v. Oja</u>, 104 N.W. 2d 19, 24 (1960)).  Applying these principles to the terms of the Settlement Agreement, plaintiffs' interpretation of "mortgage loan" is flawed.

The plain and ordinary meaning of a mortgage loan is "[a] loan secured by a mortgage of deed of trust on real property."  Black's Law Dictionary 947 (7th ed. 1999).  It is a type of *loan*, not a type of mortgage.  <u>See</u> <u>Jackson</u>, 770 N.W. 2d at 493-94.  Moreover, because the Settlement Agreement repeatedly references "payment," "interest," and "loan" in its definition of "Pick-a-Payment mortgage loan," it is clear that the Settlement Agreement conceptualizes "mortgage loan" in terms of the loan debt, not the mortgage itself.  <u>See</u> Appendix at p. 51.  If the phrase "mortgage loan" were to be

---

[9]     Along these same lines, any assertion that the settlement administrator had already declared Psick a member of Class C ignores the fact that the language of Settlement Agreement (and its interpretation by this Court), and not the representations of a settlement administrator that "you could receive benefits from a Class Action," govern whether he is a member of Class C.

[10]    "Settlement agreements are governed by basic principles of contract law," <u>MIF Realty L.P. v. Rochester Assocs.</u>, 92 F.3d 752, 756 (8th Cir. 1996) (citing <u>Sheng v. Starkey Lab., Inc.</u>, 53 F.3d 192, 194 (8th Cir. 1995)), and "the interpretation of private contracts is ordinarily a question of state law," <u>Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 474 (1989).

construed as a mortgage without a loan, any language related to loan debt found in the Settlement Agreement's definition of the phrase would be superfluous.  In essence, plaintiffs conflate "having a mortgage" with "having a mortgage loan."  There is nothing to suggest, however, that the phrase "mortgage loan" means anything but a loan secured by a mortgage.  "[I]t is not for us to rewrite [the Settlement Agreement] by construing language to mean something which it obviously does not mean."  Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co., 50 N.W.2d 629, 636 (Minn. 1951).

In summary, Psick's loan debt was eliminated by the sheriff's sale, and he did not and could not have had a mortgage loan as defined by the Settlement Agreement on the date of preliminary approval of the settlement.  Psick is not a member of Settlement Class C, and is therefore not a party to the Settlement Agreement.

Because neither Psick nor Moreno are member of Settlement Class C, they have no power to enforce the terms of the Settlement Agreement.  "Strangers to a contract acquire no rights under the contract." Gold'n Plump Poultry, Inc. v. Simmons Eng'g Co., 805 F.2d 1312, 1318 (8th Cir. 1986). "[T]he contract must express some intent by the parties to benefit the third party through contractual performance." Dayton Dev. Co. v. Gilman Fin. Servs., Inc., 419 F.3d 852, 855 (8th Cir. 2005) (quoting Norwest Fin. Leasing, Inc. v. Morgan Whitney, Inc., 787 F.Supp. 895, 898 (D.Minn.1992)).  "If no intent to benefit is shown, a beneficiary is no more than an incidental beneficiary and cannot enforce the contract."  Gold'n Plump Poultry, 805 F.2d at 1318 (citing Buchman Plumbing Co., Inc. v. Regents of the Univ. of Minn., 215 N.W. 2d 479, 483-84 (Minn. 1974)).  Moreno and Psick are not members of Settlement Class C; they are not intended beneficiaries of the Settlement Agreement; and they have no standing to enforce its terms or to bring any claims under it.  Accordingly, it is recommended that

their Complaint should be dismissed with prejudice as to all counts for lack of subject matter jurisdiction.[11]

## IV.  DEFENDANT WELLS FARGO'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

The temporary restraining order granted by the Hennepin County District Court provided that "Defendant is enjoined from proceeding further to evict Plaintiffs until such time as this *or any other Court with jurisdiction over this matter orders otherwise.*" Appendix at p. 28 (emphasis added).   Based on the Order's language, this Court concludes that it has authority to dissolve the temporary restraining order, given that this action has been removed to the present Court.   Therefore, since plaintiffs' case cannot proceed on its merits, it is recommended that Wells Fargo's Motion to Dissolve Temporary Restraining Order be granted.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1.     Wells Fargo's Motion to Dismiss Plaintiff's Complaint [Docket No. 9] be **GRANTED** and that the Complaint be Dismissed with Prejudice;

---

[11]     Plaintiffs argue that a 12(b)(1) motion is inappropriate where the merits are interlinked with the issue of jurisdiction.  See Pl.'s Memo. at pp. 2-3.   However, the Eighth Circuit has held that "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Osborn, 918 F.2d at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3rd Cir. 1977)).   "[B]ecause jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial . . . ."  Id.   Therefore, a consideration of a factual challenge to jurisdiction is not improper here.   Further, because this Court lacks subject matter jurisdiction, the Court "cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).   Accordingly, this Court may not consider any additional arguments Wells Fargo has made in support of its motion to dismiss, including its motion under Rule 12(b)(6).

      2.      Wells Fargo's Motion to Dissolve Temporary Restraining Order be **GRANTED**.

Dated:      July 20, 2012

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**<u>NOTICE</u>**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 3, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 3, 2012**.